Statement.
MONROE, J.
Plaintiff seeks to expropriate, for the purpose of constructing thereon part of a continuous line of railway, extending from Shreveport to New Orleans, a strip •of land containing .about 5.86 arpents, 100 feet wide by, say, 1,200 feet in length, running through the St. Martin plantation, owned by the defendant and situated in the parish of Jefferson.
The record-shows that on July 24, 1905, the case having been called for trial, the following agreement was entered into between Mr. Sanders, of the firm of Foster, Milling, Godchaux & Sanders and Mr. Marrero, representing the plaintiff, and Mr. Kernan, of the firm of Dart & Kernan, representing the defendant, to wit:
“It is agreed that, owing to the absence of Mr. Dart, of the firm of Dart & Kernan, this case be postponed until August 3d, at 11 o’clock, and that nothing be done to-day in the case save and except impaneling’ and swearing the jury; that on August 3d, or before, Dart & Kernan will have the right to file their answer the same as if .the jury had not been impaneled.’’
Thereupon, the jury was impaneled (after the jurors had been examined by the counsel, present, and without objection) and was discharged until August 3d, to which day the case was continued. On August 3d, counsel for defendant having offered to file an exception, and a question having arisen as to the terms of the agreement, the case was continued until August 4th, when counsel filed an exception of want of citation, and also moved to quash the venire on the ground that the jurors had, purposely, been selected from the right bank of the river, and had no personal knowledge of the property to be expropriated, which lies on the left bank. And the counsel further excepted that the sketch annexed to the petition was not such as is contemplated by law; that the description of the property to be expropriated was insufficient; that the plaintiff company was not properly in court; that no steps had been taken by the proper officers of the company to locate the land to be expropriated; that the suit had not been authorized by the proper officers of the company; that defendant was entitled to oyer of plaintiff’s charter ; and that -the petition disclosed no cause of action — which exceptions and motion were overruled by the court. And thereupon defendant answered, denying the existence of plaintiff as a corporation with the power to expropriate, alleging that it was unnecessary to plaintiff and inconvenient to defendant that the particular land selected should be taken; that it would divide defendant’s property into small parcels, interfere with the drainage,, require a rearrangement of the ditches and bridges, and prevent the profitable management thereof; and that the property to be taken was worth $3,000, and the damage to the remainder would amount to $3,000. After a tz-ial, in which there were many bills of exception reserved, there was á verdict fixing the value of the *159 land, (evidence in regard to damage having been excluded on the ground of insufficiency of allegation in the answer) at $500, which verdict was made the judgment of the court, and the defendant, after moving, unsuccessfully, for a new trial, has appealed.
Opinion.
1. It is said that, upon the suggestion contained in the motion to quash (that the jurors had been purposely selected from the right bank of the river, and knew nothing of the value of the property to be expropriated), the court should have inquired into the matter. The facts alleged were, however, known to counsel at the time that the jury was impaneled, and (apart from the agreement, by a fair interpretation of which the defendant was to answer to the merits), the motion came too late. It may be that the sheriff, in summoning the jurors from the right, instead of from the left, bank, was of the opinion that he would be more likely, in that way, to obtain men who would not be objectionable on account of interest; and, so far as their knowledge was concerned; the law was complied with when the jury was composed of “freeholders, residents of the parish in which the land lies and not interested in the issue to be tried.” It is not expected that each juror shall have a personal knowledge of the particular land to be expropriated.
2. Defendant urges that his exceptions: (1) that the petition failed to allege that the plaintiff’s board of directors had designated the route and authorized the institution of the proceedings; (2) that the map annexed to the petition and the description of the property were insufficient — should have been sustained. These exceptions were clearly dilatory, and, in view of the agreement which contemplated an answer, were properly overruled.
3. It is also said that the judge erred in rejecting, upon the ground that the demand | was not itemized, testimony offered in support of defendant’s claim for damages.
The allegations of the answer upon that subject are:
“That _ the road has been so located as to* divide his property into small parcels, thereby aggravating the injury which he will suffer by this new incumbrance ;*=•”* that the expropriation of said property will inflict loss, damage and injury on your respondent, and upon his-other property, to the extent of $3,000; that the route selected and the right of way expropriated will injure and damage the remainder of respondent’s property; that it will close the drains- and interfere with the drainage, and make necessary a re-establishment of ditches, bridges, etc., in order to utilize the remainder of the property; that it will make more laborious and expensive the cultivation of said property and the removal of crops therefrom; that it will prevent the profitable management of the remainder of the property, and, by cutting same into small pieces, will obstruct intercommunication and prevent respondent from disposing of same at its real value, which, as a large body (it> now has, owing to its proximity to New Orleans ; that said property is now in cultivation and is now bearing growing crops of sugar cane and corn, and the loss and deterioration of said crops is a part of the loss which respondent will incur and part of the damages which will be justly due him should said property be expropriated ; that, inasmuch as respondent expects to cultivate the tracts of laud on either side of said railway, proper protection should be afforded in the decree for cattle guards, road crossings, and for drainage.”
It will thus be seen that the lump sum of $3,000, which the defendant claims is to be-made up of a number of distinct items which will require the testimony, pro and con, of witnesses possessed of different kinds of in- • formation, and it is fair to presume that the defendant arrived at that sum, for the purposes of bis allegata, by adding together the amounts attributed by him to each item, and that he expects to follow the same course for the purposes of -bis probata, it is therefore only fair, in order that the plaintiff may be apprised of the nature of his demand, that the process of addition to which we have-referred should be set forth in the petition. As the pleadings stand, no one but the defendant knows what proportion of the damages claimed is attributed to the loss of the-growing crop, or to the obstruction of the drain *161 age, or to the required rearrangement of the ditches, bridges, etc., or to the division of the property into small parcels, or to the additional cost of cultivating and removing the crops, etc., and we think the plaintiff needed that information in order to enable it to meet the claim. It is suggested that plaintiff opened the door to proof upon the subject by the examination of its own witnesses, but we do not find that to have been the case. It is also suggested that plaintiff is obliged to have the value of the land “and what damages, if any, the owner would sustain, in addition to the loss of the land, by its expropriation,” assessed, as a condition precedent to its expropriation. We take it, however, that, when the owner comes into court and sets up a specific claim for damages, the matter is governed by the ordinary rules of pleading, and that he should state his case in such a manner as to place the party from whom he expects to recover on his defense.
4. The trial judge excluded the testimony of several witnesses, called by the defendant to prove the value of the land, on the ground that they were not qualified to testify on that subject
J. A. Gaudet testifies that he has bought and sold property, and that he and his wife own property, in the parish, near the property in question; that he knows the property in question, and knows its value. His testimony as to its value was, however, rejected, on the ground, as we understand the ruling, that he stated that, in making his estimate, he would take into consideration the amount recovered from plaintiff; by way of compromise, by him and his wife, for land owned by them. The witness, however, stated that he would take into consideration the sale made by his wife and himself “and other sales.” Being asked whether the compromise that he had made would be the main factor in his estimate of the value of the defendant’s land, he answered that it would not, though it would influence such estimate.
We are of opinion that the testimony should have been received. The witness, we infer, is as capable of giving an intelligent opinion upon the question at issue as any one who can be found, and is not disqualified because he has owned, and has recently sold, land in the immediate vicinity of that which he was called upon to value, or because he would have taken that circumstance into account. How far it might affect his judgment is a question for the jury.
We are of the same opinion in regard to the testimony of B. Morere and R. H. Hackney; the former having been a resident of the parish for many years and an owner of real estate, and the latter being a manufacturer who has dealt in real estate in New Orleans and was called to give his opinion of the value of the land in question as a manufacturing site.
Mr. J. W.1 Ross being asked, “Are you thoroughly familiar with the property forming the plantations above the line of New Orleans?” replied, “Only in passing through on the railroads.” Being asked, “Did you know this place?” he replied, “Only in a general way.” Being asked, “Do you know the value, in a general way?” he replied, “Yes, sir.” It does not appear, however, that he ever left the railroad train in the parish of Jefferson, and, though he was interested in sugar planting in St James, up to 1898, he admits that he has been out of that business and has not kept in touch with sugar plantations during the last six years. We are of opinion that his testimony was properly rejected.
For the reasons thus assigned, it is ordered, adjudged, and decreed that the verdict and judgment appealed from be set aside and annulled, and that this case be remanded to the district court to be proceeded with according to law and to the views expressed in this opinion.