ODOM, Justice.
 

 This is a suit to set aside a sale for lesion beyond moiety. Plaintiff alleged that she sold her undivided one-sixteenth interest in twenty-two separate and distinct lots or parcels of ground, five situated in the city of Alexandria and seventeen in the town of Pineville, just across the river from Alexandria, for the sum of $7,500 cash, the sale having been made on January 31, 1935. She further alleged that the sale included certain personal property consisting of shares of capital stock in various and sundry corporations.
 

 She further alleged that her undivided one-sixteenth interest in the property sold was worth at the time of the sale the sum of $25,000, and that therefore the sale was made for much less than one-half the actual cash value of the property. She prayed that the sale be set aside.
 

 The defendants filed an exception of no cause of action, which was overruled. They then filed answer, which in substance was a denial that the property was sold for less than half its value.
 

 There was judgment in favor of the defendants, rejecting plaintiff’s demands, and she appealed.
 

 The exception of no cause of action was levelled at the proposition that actions do not lie to set aside sales of personal property for lesion beyond moiety. No citation of authority is necessary to support that proposition. However, we think the exception was properly overruled because plaintiff in her petition specifically alleged in article 14 that her interest in the real estate transferred “had a sound value at the time of said sale in excess of $20,000.”
 

 In making this allegation plaintiff segregated the value of the real estate sold from the value of the personal property, and in so doing she saved her pleading from the objection that it sets out no cause of action. If she had not affirmatively made this segregation, the exception would unquestionably be good. Smith v. Sun Oil Co., 165 La. 907, 116 So. 379.
 

 On the merits, plaintiff failed to make out her case. Counsel for plaintiff concedes that the burden of proof was upon her to show that she sold her property -for less than half its value at the time the sale was made. She sold her undivided one-sixteenth interest therein for $7,-500 (which included some stocks appar
 
 *221
 
 ently of little value), and on page 3 of his brief her counsel states:
 

 “The price of this sale was $7,500. The property conveyed was an one-sixteenth interest. The entire property, if this be an average price, would be worth $120,000. In order for plaintiff to recover it is necessary to prove the property to be worth in excess of $240,000. Or, expressing the same thought just another way, it is necessary for plaintiff’s interest to be worth some sum in excess of $15,000.”
 

 We have read the testimony of all the witnesses for both plaintiff and defendant who were called to testify as to the value of plaintiff’s interest in the property sold, and after reading it are thoroughly convinced that the market or actual cash value of the property at the time of the sale was very much less than $240,000.
 

 The property involved consists of twenty-two pieces of real estate, five being in the city of Alexandria and the others in Pineville. Plaintiff called six witnesses, Rosenthal, Cummings, Hunter, Evans, Delahoussaye, and Jones, to prove her case. Five of them testified as to the value of the Alexandria property designated as lots 1 and 2. Jones, the sixth witness, said nothing about the value of these lots. As to the other lots in Alexandria, designated as Nos. 3, 4, and 5, Hunter, Evans, and Jones said nothing. Only Rosenthal, Cummings, and Jones gave testimony as to the value of the Pineville property. Taking the average of the estimates made by plaintiff’s witnesses, the value of the entire interest in the twenty-two pieces of property is $283,135. If these values are correct, plaintiff has made out her case.
 

 Defendant called seven witnesses, Aertker, James, Payne, Hathorn, Waters, Bringhurst, Ellington. These testified as to the value of each of the twenty-two-lots. Taking the average of the estimates, made by them, the entire interest in all the property is worth only $176,375, or $106,-760 less than the value found by plaintiff’s witnesses.
 

 This is indeed a wide spread, which makes it necessary for us to analyze the testimony of the witnesses.
 

 The chief difference between the estimates made by the witnesses for plaintiff and those made by the witnesses for the defendant lies in the valuation of the lots designated as Nos. 1 and 2, both being in the heart of the business district of Alexandria. Lot 1 is situated at the corner of Murray and Third streets, fronting 106 feet on each street. There are two two-story brick buildings on this lot. One is called the Barrett building and was erected some 30 years ago. The testimony of all the witnesses shows that at the time the sale was made this property was dilapidated, out of date, had no elevator, and was badly in need of repairs. All the testimony shows further that the lower or ground floor of the Barrett building was vacant at the time of the sale and had been for a period of 3 years prior thereto. The second story of the building was occupied by two physicians, who were paying rentals amounting to $360 per annum.
 

 The other building is almost new, and at the time of the sale was leased to the J. C. Penney Company for $550 per month, or $6,600 per year, making a gross revenue derived from these two buildings for the
 
 *223
 
 year preceding the sale of $6,960. This lot, with the two buildings thereon, is assessed as one property for $62,700. All taxes due on the property amounted to $3,244.73, and the premium on fire insurance policies was $485, making the gross carrying charges $3,729.73, leaving a net revenue of $3,230.27.
 

 The valuations placed on this particular property by plaintiff’s witnesses were as follows: Rosenthal, $145,000; Cummings, $123,000; Hunter, $156,000; Evans, $209,-000;. Delahoussaye, $140,000; average, $154,000.
 

 The valuations placed on the same property by the defendant’s witnesses are: Aertker, $93,600; James, $95,000; Payne, $96,333; Hathorn, $100,000; Waters, $105,000; Bringhurst, $105,000; Ellington, $93,796; average, $98,389; or $55,611 less than plaintiff’s average for this one lot alone.
 

 Analyzing the testimony further, we find that plaintiff’s witnesses radically disagreed among themselves as to the value of this particular lot. Cummings, who said he was a real estate dealer for many years, testified that the property was worth $123,000. Evans, formerly a dealer in electrical supplies and now liquidator of a defunct bank, said it was worth $209,-000, or a difference of $86,000. The next lowest estimate made by any of plaintiff’s witnesses was that of Delahoussaye, who said the lot was worth $140,000, or $69,000 less than Evans’ estimate. Delahoussaye was $16,000 under Hunter, who valued it at $156,000. Rosenthal said it was worth $145,000.
 

 We find.no such wide margins in the values set by defendant’s witnesses. The highest value set by any of them was by Waters and Bringhurst, each saying it was worth $105,000. The lowest estimate was by Aertker, $93,600, a difference of $11,-400. The estimates of the others were: James at $95,000; Payne at $96,333; Ha-thorn at $100,000; and Ellington at $93,-796.
 

 After reading the testimony of plaintiff’s witnesses, we are convinced that each of them, with the possible exception of Cummings, has greatly overestimated the value of the property. They all agreed that what is known as the Barrett building was old and out of date, badly in need of repairs, and probably could not be leased to a reputable tenant without the expenditure of a considerable sum of money. They all agreed that the building should be remodeled. Not one of plaintiff’s witnesses knew anything about what revenue was derived from the buildings on this particular lot, nor did they know the amount of the annual taxes and insurance which had to be paid by the owners. The testimony of these witnesses shows that they had no real, substantial basis on which to make an estimate of the value of this or of any other property involved in this litigation. If they knew of any sales which had been recently made of like property, or if they knew of any demand for commercial or residential property, either in Alexandria or in Pineville, they said nothing about it. One of plaintiff’s witnesses said that the property at the corner of Murray and Third streets in Alexandria was worth $1,500 a front foot without the improvements. Another said it was worth $1,000 per front foot without the improvements. But, if any property in
 
 *225
 
 that section or elsewhere in the city had ever been sold at any such prices, they said nothing about it. These witnesses said that in setting a value on real estate the net revenue which it produced was an important factor. Ont of them said that commercial property should yield at least 6 per cent, net on its value. Another said it should yield at least S per cent. But none of them knew what revenue this particular piece of property produced. If, as they said, the net revenue produced b} commercial property should be taken into consideration in fixing its value, it is evident that the property designated as lot or parcel No. 1 is worth something like $100,000 less than the value which they placed upon it, for the record shows the net revenue derived was $3,230.27 for the year preceding the year of the sale.
 

 Our reading of the testimony of plaintiff’s witnesses has convinced us that the valuations which they placed upon this and the other property were arbitrary and greatly inflated.
 

 What we have said as to the testimony of plaintiff’s witnesses regarding this particular lot or parcel is in a measure true of their testimony regarding the other property in the controversy. We think it unnecessary to discuss in detail the values which they placed on the other lots. Suffice it to say that our opinion is that the gross value which they placed on the property is entirely too high.
 

 Now as to the defendant’s witnesses, they valued the property at much less, and in this connection we will state that they seemed to be better qualified to estimate values of real estate, than the plaintiff’s witnesses. Mr. Ellington is a bonded real estate broker and has charge of the real estate belonging to a building and loan association and a realty company. Payne, for the 2 years preceding the trial of the case, was appraiser for the Home Owners’ Loan Corporation and had charge of all the appraisal work in the Eighth district. The wife of James, another of defendant’s witnesses, owned an interest in commercial property situated just across the street from the property designated as lot No. 1, and had charge for years of the rental of a great deal of real estate in the city of Alexandria. Aertker is secretary-treasurer of a building and loan association and of the Omega Realty Company, and is associated with McGinnis & Thornton, a partnership engaged in buying, selling, and making loans on- real estate. Bringhurst is employed by the Willow Glen Land Company and the Rescue Loan Company, and has been buying and selling real estate for 21 years. Hathorn was for a number of years employed by the Rapides Investment Company, which was engaged in the business of making loans on real estate. These witnesses were at the time of the trial, and had been for a number of years, actually engaged either in buying and selling real estate or in making loans on such, property.
 

 On reading the testimony of defendant’s witnesses, we find that each one of them had, before making his estimate, definite information as to the revenue derived from each lot or parcel, if any at all, knew the amount of taxes paid on each separate and distinct lot, and the annual insurance paid. We note further that they went into great detail as to the age and .condition of
 
 *227
 
 the improvements on the property, as to whether it was in need of repairs, and as to the desirability of each piece, whether commercial or residential. The condition of each piece of property at the time the sale was made was described and taken into consideration in fixing values, and some of them estimated the cost of such repairs as would be necessary to make the properties desirable.
 

 Several of defendant’s witnesses stated that, as a matter of fact, there was little, if any, demand for either commercial or residential property in Alexandria and Pineville at the time this sale was made in January, 1935. They said, furthermore, that the “bottom dropped out” of real estate values about the year 1933 and that there had been no increase since then.
 

 According to the valuations placed on the property by defendant’s witnesses, the value of the property is something like $74,000 less 'than the value which counsel for plaintiff said would have to be shown in order for plaintiff to make out her case.
 

 Taking the testimony as a whole, our opinion is that plaintiff has not made out her case. And in this connection we think it -well to state that not one of plaintiff’s witnesses took into consideration a fact which must be recognized, and which this court has frequently recognized, and that is this: The value of a fractional interest in real estate is less than the corresponding fraction of the total interest in the property. In other words, an undivided one-sixteenth interest in a piece of property is worth less than one-sixteenth of the value of the property as a whole. This is because the owner of a fractional interest in property is greatly hampered in the handling of it. If it is commercial properly or property which yields revenue, the owner of a fractional interest would necessarily have to consult the owner or owners of the other interest in order to make leases, repairs, or a sale. Plaintiff’s witnesses did not take this into consideration. They were not called upon to state, nor did they state, the value of plaintiff’s undivided one-sixteenth interest in the property, but merely estimated the value of the entire interest. See Fleming v. Irion, 132 La. 163, 61 So. 151; Beale v. Ricker, 7 La.Ann. 667; Fletcher’s Heirs v. McMicken, 7 La.Ann. 178.
 

 When we take into consideration the fact that this entire property except a small fractional interest was being administered by a bank as trustee at the time the plaintiff made the sale, and that for the 3 years preceding the date of the sale plaintiff had received a net revenue from the property of slightly more -than $1,000, or only about $335 per annum, and when
 
 we
 
 consider the further fact that at the time she made the sale there was pending a suit for the sale of the entire property to effect a partition amongst the heirs, and the further fact: that there was constant disagreement amongst the co-owners about the management of the property, we can well imagine why plaintiff was willing to. make the sale for $7,500 cash and why a purchaser would not be willing to pay more. These conditions necessarily lessened the value of plaintiff’s undivided one-sixteenth interest..
 

 The judgment is affirmed.