26 So.2d 689

**BLAIZE v. CAZEZU.**

No. 38003.

May 27, 1946.

Oliver S. Livaudais, of New Orleans, for plaintiff-appellant.

Rudolph M. McBride, of New Orleans, for defendant-appellee.

ROGERS, Justice.

Frank J. Blaize, on February 16, 1944, sold to the defendant, William Cazezu, for $2,000 his undivided one-third interest in a tract of land containing approximately 104½ arpents, together with the improvements thereon, situated in the Town of Buras. The tract originally measured three arpents front on the Mississippi River by a depth of forty arpents, but its area was reduced when fifteen arpents, taken from the rear of the tract on the forty-arpent line were sold to J. B. Fasterling and a lot measuring 120 square feet fronting on the highway was sold to Cognovich who in turn sold it to Fred Stockfletch.

On June 19, 1944, which was about four months after the act of sale was recorded in the clerk's office, Frank J. Blaize, the vendor, brought the present suit against

William Cazezu, the purchaser, to set aside the sale for lesion beyond moiety. Plaintiff, who is eighty-three years of age, alleged that on the day the sale was executed his wife was seriously ill and at the point of death and he himself was not in good health and was in a condition of great worry and mental upset due to the illness and approaching death of his wife; that he was not in a condition to transact business, and that defendant took advantage of "his distraught condition in proposing to pay him the small sum of $2,000.00, which was a great deal less than the true value of his property." Mrs. Fannie Hays Blaize, the wife of plaintiff, died on February 17, 1944, the day following the execution of the act of sale whereby defendant acquired plaintiff's interest in the property.

Plaintiff alleged that the entire tract, with the improvements thereon, was worth at the time of the sale $20,000; that therefore his undivided one-third interest in the property was worth $6,666.66, thereby bringing the transaction under the provisions of the articles of the Civil Code providing for the rescission of sales for lesion beyond moiety. Plaintiff prayed for judgment setting aside the sale and for the fruits and revenues received by the defendant from the time he took possession of the property, upon plaintiff depositing for the account of defendant in the registry of the court $2,000, the full amount of the purchase price, together with the costs incurred by defendant in connection with the sale.

Defendant, in his answer to the petition, denied that the sale was made for less than one-half the value of plaintiff's interest in the entire property. He alleged that the value of the property as a whole does not exceed $6,000, and that the value of plaintiff's interest therein did not exceed the purchase price of $2,000. In the alternative, defendant prayed that should the court hold that lesion beyond moiety did exist, the value of plaintiff's interest at the time of the sale be fixed and that defendant be granted the right to elect as provided by the pertinent articles of the Civil Code.

After a trial on the merits, the judge, applying the rule that in a suit for the rescission of a sale on account of lesion beyond moiety, plaintiff must establish the value of the property by strong and conclusive evidence, held that plaintiff had not made out his case. Accordingly, he rendered judgment in favor of defendant rejecting plaintiff's demands. Plaintiff's motion for a new trial was overruled and he then applied for and obtained an appeal to this Court.

This suit is brought in accordance with the statutory provisions by which the vendor of an immovable, even though of mature age and proper understanding, may, at any time within four years, have the sale set aside by proving that the price he received was less than one-half of the value of the immovable at the time of the

sale, unless the purchaser should elect to keep the property by making up the difference between the price paid and its just value. Civ.Code, Articles 1861, 1862, 1871, 2589, 2590, 2591, 2595, Fernandez v. Wilkinson, 158 La. 137, 103 So. 537.

■ The law presumes juris et de jure that he who sells an immovable for less than half its value is acting under an error of fact sufficient to invalidate the sale. Civ.Code, Articles 1860, 1861. This presumption is so strong and conclusive that even if the vendor should know and expressly declare he knows the value of the property exceeds twice the price received, and should even declare that it is his purpose to give the purchaser the surplus of the thing's value over the price received, and that he expressly abandons the right to rescind the sale, nevertheless the law still gives him that right. Civ.Code, Art. 2589; Fernandez v. Wilkinson, 158 La. 137, 103 So. 537. The one prerequisite that the price paid be less than one-half the value of the property as established at the time of the sale.

The entire property involved in this suit is a portion of the property which was acquired by Louis Cazezu, a brother of the defendant, William Cazezu, and A. A. Buras by purchase from B. Anticich on October 8, 1921. The consideration for the sale was $7,000, paid in cash. On October 18, 1921, which was ten days later, the plaintiff, Frank J. Blaize, acquired an undivided one-third interest in the property by purchase from Louis Cazezu and A. A. Buras, for which he paid $2,233.33. On July 12, 1922, Louis Cazezu purchased the interest of A. A. Buras in the property for $2,400. Therefore, at the time Frank J. Blaize sold his undivided one-third interest in the property to William Cazezu the remaining undivided two-thirds interest was owned by Louis Cazezu, the brother of William Cazezu.

On the question of value plaintiff offered the testimony of a number of witnesses living in the vicinity of and who are familiar with the property. Some of these witnesses are property owners themselves. The substance of their testimony is that the entire tract of land, with the improvements, owned in indivision by Frank J. Blaize and Louis Cazezu before the sale by Blaize of his interest to William Cazezu, was worth at the time of that sale at least $20,000.

Walter Blaize, a son of plaintiff who resides about four blocks from the property in his own home where he conducts an automobile garage business, testified that, in 1921, he purchased for $450 a two-room cottage, together with an acre of ground on which it is located, in the Town of Buras, and that two weeks prior to the date on which he testified he was offered $6,200 for the property. He further testified that from his knowledge of values and from what he had seen of different transactions and offers he placed a value of $30,000 on the property as a whole and

stated that he would give plaintiff, his father, "right now" $7,000 for the one-third interest he sold to William Cazezu. He further stated that if he had known about the proposed sale to William Cazezu, he would never have allowed his father to sell the property; that his father did not sell his interest in the property—"he gave it away."

Opposed to this testimony is the testimony of defendant himself who stated that his brother, Louis, informed him that Blaize offered to sell the property to him on the basis of a value of $6,000 for the whole, but that he did not want to buy it and referred Blaize to him; that the following morning he saw Blaize on the road and asked him to go to the notary's office. When they got there everything was prepared and Blaize fixed the price. He paid $2,000 cash, which he testified was all that he was willing to pay, although he admitted on cross-examination that his purchase represented a good bargain.

Louis Cazezu, who owns the other two-thirds interest in the property, related in detail how Blaize approached him about the sale; that Blaize told him he wanted to sell his interest in the property because he could not get around any more and that when his wife died he would move away, but he did not want that fact to become known. He testified that Blaize stated he thought the whole property was worth $6,000 and he told Blaize that was a fair price; that he did not want to buy any

more land, but would send his brother to him; that Blaize asked him to tell William to come down and they would fix it up.

The notary, who executed the act of sale, testified that Blaize told him he was leaving Buras and wanted to get things straightened out before he left. The notary further testified that he thought the price Blaize received for the property was fair, unless a person wanted to take a gambler's chance and spend four or five thousand dollars on the property when it might be worth a great deal more than it is worth in its present state. On cross-examination, he stated that he owns his home situated near the property involved in this suit, on which he conducts a store, and that he would not sell his property for any price.

The fact that Blaize may have been anxious to sell the property preparatory to leaving Buras on the death of his wife is a matter of no importance. As pointed out in Fernandez v. Wilkinson, plaintiff's action is purely statutory and when cleared of all questions influencing Blaize to sell or Cazezu to buy, the question still remains, was the price received by plaintiff from defendant less than half of the just value of the property at the time of the sale?

After considering the testimony of the witnesses, the judge held that the market value of the property at the time of the sale was less than $20,000 as alleged by

plaintiff, and that as plaintiff's witnesses were unable to point out any recent sales of property in the vicinity, he considered their testimony as to the value of the property to be arbitrary and inflated, and that it furnished no substantial basis on which to fix the value of the property. He further held that certain sales of the property situated in the Home Place, approximately 15 miles from the property involved in this suit, were not applicable in determining the market value of the property.

■ We are of the opinion that the testimony of plaintiff's witnesses as to value is entitled to serious consideration, notwithstanding that they were unable to point out any recent sales in the vicinity of the property involved in this case. While such knowledge is always desirable, it is by no means the sole test of the ability of a witness to estimate the value of property. In many cases it is not the chief element in determining the weight to be attached to the testimony of the witness. The uses and capabilities of the property, the prices at which similar property in the vicinity is sold or offered, knowledge or observation of the growth and development of the town or city in which the property is situated, a general knowledge of trade and business and of the commercial advantages or prospects of the place are all matters which are more or less taken into account by an intelligent witness in forming his opinion as to the value of a particular piece of property.

■ An observer, who is sufficiently familiar with the property to make his inference serviceable, may state his estimate of its value, because of the necessities of the case, this being as a practical matter the only available method of proof in a great many cases. 22 C.J., Evidence, sec. 679, pp. 573, 574, 32 C.J.S., Evidence, § 545. This case furnishes one of the instances referred to in the rule, for it was impossible for plaintiff to offer any proof of value by recent sales of property in Buras because, as disclosed by the evidence, for many years no one has sold or would sell his property in the town.

■ Market value is usually regarded as the standard, for even where there is no available market for the property the estimate of the witness must be largely controlled by consideration of what would be a fair price if a market could be found. 22 C.J., Evidence, sec. 679, p. 575; 32 C.J.S., Evidence, § 545. Value is largely a matter of opinion, and where there is no market value it is more or less a matter of conjecture. Brady v. Jay, 111 La. 1071, 36 So. 132.

■ In estimating the value of land, personal knowledge of the witness as to value based on actual sales is not indispensable. Lack of such knowledge, or absence of proof thereof, affects only the weight of the evidence. All that is required is that the opinion of the witness is based upon an acquaintance either with the property in question or with other property

of like or general character and location. Baillie & Co. v. Western Assurance Co., 49 La.Ann. 658, 21 So. 736; Louisiana Ry. & Navigation Co. v. Morere, 116 La. 997, 41 So. 236; Louisiana Ry. & Navigation Co. v. Sarpy, 117 La. 156, 41 So. 477.

■ The witnesses offered by plaintiff to prove value, we infer from our examination of the record, are as capable of giving intelligent opinions upon the question as any persons who could be found. They are all of mature age and have lived for many years, some of them all their lives, in Buras or its vicinity and are well acquainted with the property in question. They observed the growth and development of Buras and its surrounding territory for many years, including the twenty-five years that has elapsed since Blaize acquired his interest in the property from Louis Cazezu and A. A. Buras. During that period Buras itself has grown from a mere community consisting of a few houses in the open country to a flourishing industrial town, the center of business activities on the west bank of the Mississippi River below New Orleans. Within the limits of the town are an electric plant which furnishes electricity for 40 or 50 miles up and down the river, a large school and auditorium, an ice factory, two drugstores and other stores, four or five saloons, a picture show, three hotels, and three canning plants in full operation and giving employment to a number of persons. There also has been

considerable agricultural and mineral development in the vicinity of the town. A sulphur mine, one of the largest, if not the largest, in the world has been opened and is being operated by the Freeport Sulphur Company. The mine and the Town of Sulphur in which the employees of the sulphur company live are situated about 12 or 15 miles from Buras. There also is considerable oil development near Buras. A producing oil well with a pipe line running through the property to the river is located within a half mile of the property in the rear of the forty-arpent line. All these developments and activities are familiar to the witnesses who testified that as a result thereof property in Buras and its neighborhood has greatly enhanced in value during the past twenty-five years, so much so that no person owning property there is willing to sell. So far as concerns the property in question the testimony shows that it is commercial property situated in the center of the town. In addition to the oil pipe line there are a number of buildings located on the property which are rented or are capable of producing revenue. There is also a canal on the property which is used by shrimp and oyster fishermen to land their boats for which a charge is exacted on each barrel of shrimp or oysters brought to the landing.

The record discloses that the property produces a revenue of at least $94 a month, although it may be, as contended on behalf

of plaintiff, that there is additional revenue derived from the property which, because of plaintiff's condition and the antagonistic attitude of Louis Cazezu, his co-owner, it was impossible to establish on the trial of the case.

On the record as presented to this Court plaintiff has established by the preponderance of the evidence that the whole property in which he owned an undivided one-third interest was worth at least $20,000 at the time he sold his interest to William Cazezu. But we are unable to fix the value of plaintiff's interest at $6,666.66 (one-third of $20,000) as claimed by him, in view of the fact that the value of a fractional interest in real estate is less than the corresponding fraction of the total interest in the property; in other words, a one-third interest in a piece of property is worth less than one-third of the value of the property as a whole. Hustmyre v. Waters, 186 La. 218, 171 So. 855. Until there is evidence offered on that point we feel that full justice can not be done to the parties to this suit. Fleming v. Irion, 132 La. 163, 61 So. 151.

For the reasons assigned, the judgment appealed from is annulled and this case is remanded to the district court for further proceedings consistent with the views herein expressed; the costs of this appeal to be paid by the defendant and appellee, all other costs to await the final disposition of the case.