The above two plaintiffs, Eddie J. Schouest and Notilio, Schouest, brought separate suits against the three defendants, Fred M., Harris J. and Abel L. Schouest, to rescind the sale of an undivided one-ninth interest each in and to a tract of land on Bayou Lafourche measuring one arpent front by forty arpents in depth. The allegations in both suits are practically the same.
In their separate petitions, each of the plaintiffs sets out how he became the owner of an undivided interest in the land, and each of them allege the sale of this interest to the three defendants, their brothers, for a consideration of $310, and allege that their respective one-ninth interests were worth $1200 each at the time of the sale, and each asks that the sale be set aside for lesion beyond moiety. By the answers filed by the defendants, and by the evidence produced in the cases, the issues have been narrowed down to the question of whether or not there was lesion beyond moiety in these two sales.
The two cases were consolidated for trial, but separate judgments were entered in each case. The trial judge decided both cases in favor of the plaintiffs, and gave the defendants two weeks in which to decide whether they would rescind the sale or have it confirmed by paying each plaintiff the difference between the consideration received by them and the sum of $1000, which the court found to be the value of the undivided interest of each in the land; or, in case they decided to rescind the sale, plaintiffs were given two weeks after notice of such intention in which to deposit $310 each, with interest, in the registry of the court. Separate appeals were taken by the defendants from these judgments.
On June 25, 1945, in order to settle disputed claims of nine Schouest heirs or co-owners and the claims of Mrs. Camille T. Deramee and Marie Celeste Deramee, the parties made the following conveyances affecting the property in dispute: the Deramees conveyed to John Pitre a tract of land on Bayou Lafourche measuring two arpents in front by forty arpents in depth, the vendors reserving a one-eighth interest in the mineral rights, the consideration of this sale being fixed in the deed at $3000 cash. The nine Schouest co-owners also made a deed to John Pitre covering the same property for a recited consideration of $4000 cash. John Pitre on the same day made a deed to the nine Schouest heirs covering the lower forty arpents described in the other two transactions, together with an undivided one-eight interest in the minerals on the upper tract. The consideration recited in this deed was $3000 cash. After these transfers were made the nine Schouest heirs (all majors) owned this forty arpent tract in indivision in the proportion of an undivided one-ninth interest each. *Page 873 
On July 31, 1945, a little more than a month after the Schouest heirs acquired the 40 arpent tract in the manner stated above, Eddie J. Schouest, one of the plaintiffs in this suit, sold his undivided interest in the property to his three brothers, the above named defendants, for a cash consideration of $310. On August 17, 1945, a little less than two months after the Schouest heirs acquired said tract of land, Notilio Schouest, the other plaintiff, sold his one-ninth interest in the property to said three defendants for a cash consideration of $310. These are the two sales under attack in these two suits.
On the day of the trial, a motion to discontinue the suit signed by Eddie J. Schouest was presented to the court by counsel for defendants. This plaintiff was not in court at the time the motion was presented. The trial judge refused to dismiss or discontinue the suit of Eddie J. Schouest for the reason that he had not paid the costs as required by Article 491 of the Code of Practice, as amended by Act 248 of 1944.[1]
The case proceeded to trial, and several witnesses were produced in behalf of the plaintiffs. Practically all of these witnesses reside in the community in which the property is located. Six or seven of these witnesses testified that this forty arpent tract of land was worth at the time of the sale in 1945 from $8000 to $10,000. Several of these witnesses testified that an undivided one-ninth interest in the tract was worth at least $1000. The decided preponderance of the evidence — at least in the number of witnesses — shows that a one-ninth interest in this tract of land was worth approximately $1000 in July and August, 1945.
The strongest testimony produced in favor of defendants is the fact that in the act of sale by which these nine Schouest heirs obtained a title from John Pitre to the property in the latter part of June, 1945, the consideration in the deed is fixed at $3000. Two of the defendants who testified in the case stated that they arrived at the value of the one-ninth interests of their two brothers on the basis of this valuation of $3000 for the forty arpent tract. It also appears that Pitre paid this amount for the upper forty arpent tract (without any buildings thereon), and it is urged that all the parties then considered the two forty arpent tracts to be worth $3000 each. If that was the value of the forty arpent tract owned by the Schouest heirs in indivision in the summer of 1945, it is obvious that the defendants gave the two plaintiffs a fair value for their interests.
However, it is contended by counsel for plaintiffs that the fixing of these values in these transactions was merely for the purpose of effecting a settlement of the conflicting claims of the Deramees and the Schouests, and did not necessarily represent the actual value of the two forty arpent tracts at that time. The record shows that the $3000 consideration expressed in the deeds covering these two tracts was not actually paid, but that only $1000 was paid to adjust the value of improvements located on one of the tracts.
One witness called in behalf of plaintiffs, a merchant and Representative from Lafourche Parish, fixed the value of the forty arpent tract at around $5000, and a one-ninth interest at about one-ninth of that amount. If the entire forty arpent tract was not worth more than $4000 or $5000, as testified by this witness, the interest of each of the plaintiffs could not have been worth twice as much as each of them received.
However, in addition to the testimony of a decided majority of the witnesses to the effect that an undivided one-ninth interest in the property was worth not less than $1000, the strongest evidence to support this valuation is the fact that Pitre, in July and August, 1945, offered two of the Schouest heirs $1000 each for their undivided one-ninth interests. While Pitre did not actually obtain a deed from these two Schouest heirs to their undivided one-ninth interest until March, 1946, we find the following stipulation of counsel in the *Page 874 
record with reference to one of these sales:
"It is admitted that Joseph Schouest, one of the brothers of the plaintiffs and defendants, sold an undivided one-ninth interest in the property in question to Mr. John Pitre for $1000, cash, in the month of March, 1946, as more fully shown in Exhibit 6,' and that John Pitre offered to buy this interest from him in the month of July or August, 1945, for the said sum of $1000."
[1] It will therefore be seen that about the same time these two plaintiffs sold their interests to the defendants for $310 each, Pitre was offering $1000 each for the same undivided interests. We therefore are unable to say that the trial judge was in error in his finding that an undivided one-ninth interest in this property was worth $1000 at the time the two sales in question were made.
[2, 3] There was no fraud or bad faith charged or proved on the part of the defendants. On the contrary, the record shows that they acted in good faith and did not take advantage of their brothers in these two transactions. But lesion beyond moiety is not dependent on fraud or misrepresentation. Article1860 of the Civil Code states that lesion is the injury suffered by one who does not receive a full equivalent for what he gives in a commutative contract, and the injury is founded on the principle that it resulted from implied error on the part of the person who suffers such a loss. Lesion in a sale of immovable property will justify the vendor in rescinding the sale, if he has been aggrieved by more than half the value of the property sold. Civil Code, Article 2589; Blaize v. Cazezu,210 La. 176, 26 So.2d 689.
As before stated, the plaintiff Eddie Schouest signed a motion to dismiss or discontinue his suit, which motion was presented to the court and refused by the trial Judge before the taking of testimony began. This plaintiff was not present on the day of the trial, but a stipulation was made that his testimony would be obtained and filed in the record at a later date. Some two weeks after the case was tried, testimony of this plaintiff was taken out of court by consent of counsel for both parties.
He admits signing the motion to discontinue his case against these defendants, and states in his testimony that the reason he filed the suit to set aside the sale was because Mr. John Pitre agreed to give him $690 and pay back the $310 which he received from his brothers if the sale was set aside. In answer to a question, he stated that he still did not want to prosecute or continue the suit against his brothers; that his interest in the property was worth nothing to him, and he feels that he got from his brothers what his interest was worth; that he is satisfied with the sale.
This plaintiff admits that he went to the office of the attorneys with Mr. Pitre before the suit was filed, but he claims that Mr. Pitre did all the talking and employed the attorneys who are now representing him in this suit. We are satisfied that this plaintiff consented for this suit to be filed by the attorneys, but it appears that he is now unwilling to continue the suit, and from his attitude it is clearly shown that he does not want a judgment to be rendered in his favor against his brothers setting aside this sale.
[4, 5] We think the trial judge was correct in refusing to dismiss the suit before the trial was had on the written motion signed by Eddie J. Schouest. Before the amendment of Article 491 of the Code of Practice by Act 248 of 1944 (outside the Parish of Orleans), the plaintiff in a suit could discontinue or dismiss his suit at any time on paying the costs, and such dismissal would not operate as res adjudicata. By the amendment of the above article in 1944, it is provided that no party to the suit can have his suit dismissed or discontinued unless he presents a certificate certifying that he has paid the accrued costs. These provisions of the Code of Practice relate to the dismissal or discontinuance of a suit before trial. These provisions have no reference to the dismissal of a suit on the merits after a trial has been had, or where the rendition of a judgment will operate as res adjudicata.
[6] In this case, the questions involved were put at issue and the testimony taken. Obviously, the defendants are entitled to have the issues decided in such a way as to *Page 875 
operate as res adjudicata. To hold that the amendment to the above mentioned Article of the Code of Practice would not permit a judge to sign an order or judgment dismissing a suit after trial without the previous payment of costs would be to hold in effect that he could never decide a case against plaintiff who was unwilling or refused to pay the costs. We are sure that the amendment did not intend such an anomalous situation.
[7] As we have already stated, the plaintiff Eddie J. Schouest has indicated clearly that he does not want a judgment in his favor; that he is satisfied with the sale. We can hardly see how a court can render a judgment in favor of a plaintiff who indicates in his sworn testimony that he is satisfied and does not want a judgment in his favor. This plaintiff voluntarily filed this suit and he is therefore responsible for the costs which have been occasioned by his suit, and he should be condemned for the payment of these costs.
Separate decrees will be entered in each of these cases in conformity with the foregoing opinion.
[1] Act 248 of 1944 does not in terms purport to amend Article 491 of the Code of Practice, but amends and re-enacts Act 186 of 1940. These two acts relate to the same subject matter as that contained in Article 491 of the Code of Practice and do affect that article, while not in terms specifically amending it.