**89 So.2d 124**

Elliott W. GREEN et al.

v.

DISTRICT GRAND LODGE NO. 21–A, GRAND UNITED ORDER OF ODD FELLOWS of the State OF LOUISIANA et al.

No. 42564.

June 11, 1956.

W. P. Macmurdo, Baton Rouge, Joseph A. Loret, Baton Rouge, of counsel, for plaintiffs-appellants.

Breazeale, Sachse & Wilson, Ashton L. Stewart, John T. Laycock, Baton Rouge, for defendants-appellees.

SIMON, Justice.

By resolution adopted by its officers, the District Grand Lodge No. 21–A, Grand United Order of Odd Fellows of the State of Louisiana, sold its building located in Baton Rouge, Louisiana, known as "The Temple", to the Most Worshipful Prince Hall Lodge, Free and Accepted Masons of

Louisiana, by act of sale dated November 8, 1948, for the sale price of $42,976.66.

On May 1, 1951, two and one-half years after said sale, plaintiffs herein, as members of the District Grand Lodge No. 21–A, Grand United Order of Odd Fellows of the State of Louisiana, instituted suit against their said organization, hereinafter referred to as Odd Fellows, its officers, and against the purchaser of the said building, hereinafter referred to as Masons, seeking to have the aforesaid sale set aside on the ground that the resolution authorizing same was illegal, false and spurious, and that the persons purporting to represent the vendor thereof were without authority so to do. Alternatively, plaintiffs allege that the said sale should be set aside for lesion beyond moiety. Plaintiffs also pray for damages in the amount of the rents and revenues that shall accrue from date of filing suit until the said Odd Fellows shall regain possession of said property.

All of the defendants filed various exceptions, namely: (1) a plea of prescription on the ground that plaintiffs' claim for damages was barred by the prescription of one year; (2) a plea of estoppel; (3) no cause and no right of action; and (4) want of interest; all of which were referred to the merits.

On trial of the merits the trial court dismissed plaintiffs' suit for their failure to have proven by a preponderance of the evidence either their main or alternative demand.

On the appeal to this court plaintiffs abandoned their claim for damages and prosecuted this appeal for the annulment of the sale on the grounds aforesaid, thus presenting solely questions of fact, whether the resolution authorizing this sale to the Masons was legally adopted; and, if so, whether said sale should be annulled and set aside for lesion beyond moiety.

Plaintiffs contend that a conspiracy was entered into between the officers of the Odd Fellows and the Masonic Lodge and that in furtherance of said conspiracy the officers of the Odd Fellows falsified the minutes of its meeting at which the sale herein sought to be set aside was authorized.

The record discloses that the Odd Fellows acquired the property here involved on February 4, 1944, from another order of Odd Fellows, then in liquidation, for the purchase price of $30,401, $30,000 of which sum the Odd Fellows borrowed from the defendant Masons, securing said loan with a mortgage on said property, payable in 15 annual installments, beginning March 4, 1945. In receivership proceedings of the original vendor, this property was appraised at the value of $30,000 for purposes of sale, and its sale at that price was ordered and approved by the court having jurisdiction of the liquidation proceedings.

On November 8, 1948, the act of sale transferring "The Temple" from the Odd Fellows to the Masons was executed for the purchase price of $42,976.66, said con-

sideration being paid and discharged by the cash sum of $15,000, and the balance of $27,976.66 being paid and discharged by the surrender of the original mortgage note of $30,000 marked "paid and cancelled". The cash sum of $15,000 was thereafter prorated among certain members of the Odd Fellows, vendor, some of whom, though having accepted their share of said money, nevertheless now seek to set the sale aside.

The record discloses that the Odd Fellows consisted of 374 members. It was heavily in debt, with no apparent resources. Its operations were most unsuccessful, giving no promise of the liquidation of its mortgage indebtedness through revenue at any foreseeable time. The little revenue being received from said mortgaged property was insufficient for its upkeep and operation. As of June, 1948, the Odd Fellows owed the Masons a balance of $27,976.66 on its mortgage indebtedness. Obviously it was necessary for the organization to raise sufficient money to keep up with this obligation or lose the property by possible foreclosure of the mortgage. It was therefore deemed advisable by the members to sell the property.

The resolution authorizing the sale in question, which plaintiffs claim is false and spurious, acknowledges the inability of the Odd Fellows to meet its payments due on its mortgage in favor of the Masons, which was already in default. It further

acknowledges that at the time of the execution of the mortgage it entered into an agreement in good faith with the Masons to the effect that if the mortgage indebtedness could not be met, it would convey title to said property to the Masons, without necessity of foreclosure, for a valid and just consideration; that the consideration should be the outstanding balance of said mortgage indebtedness, then amounting to over $27,000, plus such additional cash as the Masons could be induced to pay; and that out of said cash payments a certain percentage thereof would be used for charitable purposes and the balance distributed prorata among its membership in good standing. It authorized and instructed the membership of the executive committee to represent the Odd Fellows in executing the sale and conveying a valid and merchantable title.

Plaintiffs contend that the sale in question was the result of a conspiracy between certain officers of the Odd Fellows and the Masons; that the actual resolution adopted by the Grand Lodge was amended so as to authorize the sale of the property to the *best, last and highest bidder* and not to the Masons, under the terms and conditions as set forth in the resolution hereinabove referred to.

A careful reading of the testimony of the witnesses offered by the plaintiffs clearly shows that there was no disagreement as to the necessity of the proposed sale of the property and that full notice of the contemplated sale was given to the members of Odd Fellows by letters dated June 8, 1948, five months prior to the date of the execution of the sale, November 8, 1948. The record further shows that the resolution authorizing the sale was adopted by a vote of 29 to 1 of the delegates to the Grand Lodge, and it is preponderantly shown that the said resolution correctly recites the ultimate action taken by them thereon. Plaintiffs' contention that an amendment to the said resolution authorized the sale to the last and highest bidder finds no support in the record.

The record fails to show that any member of either the Odd Fellows, vendor, or the Masons, vendee, personally benefitted as the result of the aforesaid sale. The evidence shows that most of the plaintiffs received and used the sum of $25 which was given by check to each of them as a prorata share of the balance of the purchase price after deductions therefrom for indebtednesses and a certain sum allotted for a charitable purpose.

We find no error in the conclusion reached by the trial judge that the resolution authorizing the sale was a valid one, and the complaints leveled thereat by plaintiffs are without merit.

The question whether a sale is invalid for lesion beyond moiety is necessarily one solely of fact. In determining this issue the trial court thoroughly analyzed the testimony of expert witnesses regarding the market value of said property.

The three expert witnesses offered by plaintiff fixed the value of the property in 1948 at $95,428, $105,455 and $109,500. The expert witnesses in behalf of defendant, however, fixed the value of the property at sums of $33,333, $30,000, $42,500 and $42,977.66.

Each of the witnesses explained the basis of his appraisal, taking into consideration to a degree, more or less, the factors of reproduction cost less depreciation, income, cost of operation, location and usage. In his written opinion the trial judge points out that the outstanding difference in the testimony on value offered by the plaintiffs and that offered by defendants is that plaintiffs' witnesses admittedly never saw the property in 1948, never knew what revenues, if any, were being derived therefrom nor the demand for office space or other commercial activity in the building at that time; whereas all of the witnesses who testified for defendants had an intimate knowledge of all or most of these factors, and therefore were in a more advantageous position to creditably express an opinion as to market value as of 1948.

▮ The uses and capabilities of the property, the prices at which similar property in the vicinity is sold or offered, knowledge or observation of the growth and development of the town or city in which the property is situated, a general knowledge of trade and business and of the commercial advantages or prospects of the place are all matters which are more or less taken into account in forming an opinion as to the value of a particular piece of property. Blaize v. Cazezu, 210 La. 176, 26 So.2d 689.

In addition to the testimony of the witnesses the trial court considered the fact that in the year 1944 the property here involved was purchased in a receivership sale. The record of that receivership proceeding was offered in evidence, and it showed that the property was appraised and reappraised until finally it was decided that the most that could be realized therefor was the sum of $30,000. There was little, if any, increase in the value of the property from 1944 to 1948. At the time the property was purchased it was considered only as a place for social contact among persons of the colored race and a place for fraternal orders to hold their meetings. It was not classified as commercial property in any sense of the word, and in 1948 when the sale herein was made to the Masons, there was little, if any, demand for such property for any purpose, much less for commercial purposes. Furthermore, it is shown that the highest and best use of the building is the use to which it was put during the time of its ownership by the Odd Fellows herein.

In addition to the testimony of the witnesses as to the market value of the property at the time of the sale, it was proper for the trial judge to test the value of

said property under the additional consideration of what the property was worth to the vendor at the time of the sale and under the circumstances by which it was surrounded. Copely v. Flint & Cox, 16 La. 380.

█ The law presumes juris et de jure that he who sells an immovable for less than half its value is acting under an error of fact sufficient to invalidate the sale. LSA–Civil Code, Articles 1860, 1861. This presumption is so strong and conclusive that even if the vendor should know and expressly declare he knows that the value of the property exceeds twice the price received, and should even declare that it is his purpose to give the purchaser the surplus of the thing's value over the price received, and that he expressly abandons the right to rescind the sale, nevertheless the law still gives him that right. LSA–Civil Code, Article 2589; Fernandez v. Wilkinson, 158 La. 137, 103 So. 537. The one prerequisite is that the price paid be less than one-half the value of the property as established at the time of the sale. Blaize v. Cazezu, supra.

█ Taking all these matters and the applicable laws into consideration, we find no error in the conclusion of the trial court that the sale price of the property fairly represented its market value at the time of the sale.

Accordingly, for the reasons assigned, the judgment of the trial court is affirmed.