355 So.2d 46 (1978)
Succession of George Randolph ROGERS, Plaintiff-Appellee,
v.
Cecil S. READ, Sr., Defendant-Appellant.
No. 13429.
Court of Appeal of Louisiana, Second Circuit.
January 16, 1978.
Rehearing Denied March 1, 1978.
*48 Rabun & Post by Armand F. Rabun, Farmerville, Lemle, Kelleher, Kohlmeyer & Matthews by Mack E. Barham, New Orleans, for defendant-appellant.
Walker, Holstead & Smith by R. Wayne Smith, Ruston, for plaintiff-appellee.
Before BOLIN, PRICE and HALL, JJ.
En Banc. Rehearing Denied March 1, 1978.
HALL, Judge.
John Hodge, as administrator of the succession of George Randolph Rogers, sued Cecil S. Read, Sr. to rescind a sale of 120 acres of land made by decedent to defendant, on grounds of lesion beyond moiety. In June 1974, a year before his death, the 94-year-old decedent sold his "home place" for $4,000. He died intestate in June 1975, survived only by collateral heirs.
Defendant filed an exception of no cause and no right of action alleging that the administrator had no right of action because collateral relations cannot maintain an action for lesion beyond moiety and no cause of action because it was not alleged that the disposition of the property impaired the heirs' legitime. Defendant also filed an exception of improper party plaintiff and failure to join indispensable parties plaintiff, contending that the action is personal as to the heirs and must be filed by each of the heirs, all of whom must be made parties plaintiff. The district court overruled all exceptions.
At trial, the parties stipulated that Rogers died intestate without any ascendants or descendants; that decedent was never interdicted nor was there ever any application filed for his interdiction; that the act of conveyance dated June 16, 1974, was executed in authentic form; that $4,000 was the only consideration paid on the date of the sale; that the property was the separate and paraphernal property of Rogers; and that at the time of the sale decedent was 94 years old. Expert evidence was offered as to the fair market value of the property on the date of sale. The trial court determined that the fair market value of the property on the date of sale was $200 per acre or $24,000, and that the sale price of $4,000 was less than one-half the value of the property. Defendant's alternative defense that the decedent intended to donate the value of the property in excess of the market value was rejected. Judgment was rendered declaring the sale lesionary, establishing the market value at the date of sale as $24,000, giving defendant the election of either retaining title by paying the difference between the sale price and the market value or returning title to the succession, and ordering defendant to reimburse the succession for income produced from the property since the date of filing suit in the amount of $320 in the event of election to return title. Defendant appealed. We affirm, being of the opinion that the trial court correctly disposed of each of the legal and factual issues presented by this case in well-reasoned and authoritative reasons for judgment.
On appeal, defendant specifies the trial court erred in the following respects: (1) In permitting plaintiff to prosecute this action without producing evidence as to his qualification as administrator of the succession; (2) In concluding that collateral relations, as opposed to forced heirs, can maintain an action of rescission for lesion beyond moiety; (3) In rejecting the alternative defense that decedent intended to donate to defendant any excess in the market value of the land over and above the sale price; (4) In determining that the market value of the property at the time of the sale was $24,000; and (5) In determining that defendant was indebted to the succession in the amount of $320 for income received after the suit was filed.

*49 FIRST SPECIFICATION OF ERROR
Defendant argues that the record contains no evidence that the plaintiff is in fact the duly qualified administrator of the decedent's succession. There is no indication in the record that plaintiff's qualification as administrator was ever questioned at any stage of the proceeding until raised for the first time in defendant's brief on appeal. The defendant's exception of improper party plaintiff did not question plaintiff's qualification as administrator but only questioned his right to act on behalf of the collateral heirs of the decedent in this action, an issue not asserted on appeal. Any question as to plaintiff's appointment as administrator of the succession should have been raised by the dilatory exception of lack of procedural capacity. If not filed prior to answer, dilatory exceptions are waived. LSA-C.C.P. Art. 926. Since defendant did not file a dilatory exception questioning plaintiff's procedural capacity as administrator prior to answer, defendant waived this defense and cannot raise it on appeal.

SECOND SPECIFICATION OF ERROR
Defendant's major contention in this case is that the action of rescission for lesion beyond moiety is limited to forced heirs and cannot be raised by collateral heirs. Defendant argues that the harshness of the remedy for lesion and its derogation from the principle of individual freedom to alienate property support a decision that the action is strictly personal and if heritable at all its heritability should be limited to forced heirs. It is contended that the action to rescind a sale of an immovable for lesion beyond moiety is analogous to actions to rescind a simulated sale or declare a sale to be a donation in disguise or to annul a prohibited donation such as a donation to a concubine or a donation omnium bonorum, which latter actions have been limited to forced heirs.
The analogy between an action by heirs to set aside a sale on the grounds of lesion beyond moiety and actions of heirs to set aside simulated sales, donations in disguise, or prohibited donations, is not valid. There is a significant distinction between actions granted to forced heirs so that they may enforce the right of forced heirship and actions given to individuals to enforce a right granted in the law of contracts or property. The former are actions which proceed from the principle of forced heirship and are in essence attacks on the acts of their ancestor. Forced heirs are suing not as representatives of their parent but as "quasi-creditors" of their parent. "With respect then to their legitimate portion, children have rights, which not only are independent and distinct from those of their parents, but may be . . . directly at war with those which their parents wish to exercise." Croizet's Heirs v. Gaudet, 6 Mart. (O.S.) 524 (1819).
The latter are those actions in which the representatives or heirs stand in the shoes of the ancestor and assert those rights vested in their ancestor. An heir enforcing the right of rescission for lesion beyond moiety is not asserting a right of forced heirship but is asserting instead a contractual or statutory right of his ancestor. He does not assert the right against his ancestor or attack the act of his ancestor as do forced heirs in their attack on simulated sales and donations in disguise. He asserts those rights not strictly personal to his ancestor which have been transferred to him through the law of succession.
Important to the resolution of the second specification of error is a determination of whether the action for rescission of a sale of an immovable for lesion beyond moiety is personal or heritable.
The law relating to lesion is found in the sections of the Civil Code dealing with the law of obligations. It is found generally in Book III Title IV "Of Conventional Obligations" and more specifically as it relates to Sales in Book III Title VII "Of Sales."
Lesion is a ground for rescission of certain contracts and is limited to sales of immovable property and to partitions. LSA-C.C. Art. 1861.
*50 A sale is a commutative contract in which equivalents are supposed to be given and received. LSA-C.C. Art. 1860. When the price is less than one-half the value of the object given, the vendor is presumed to be in error and one element of a valid sale, consent, is vitiated. The law gives the vendor a remedy to demand rescission of the sale. LSA-C.C. Art. 2589. The vendee is given the option to "restore the thing and take back the price which he has paid, or make up the just price and keep the thing." LSA-C.C. Art. 2591. This presumption of error is "so strong and conclusive that even if the vendor should know and expressly declare he knows the value of the property exceeds twice the price received, and should even declare that it is his purpose to give the purchaser the surplus of the thing's value over the price received, and that he expressly abandons the right to rescind the sale, nevertheless the law still gives him that right. Civ. Code, Art. 2589; Fernandez v. Wilkinson, 158 La. 137, 103 So. 537." Blaize v. Cazezu, 210 La. 176, 26 So.2d 689 (1946).
This presumption of error and its legal remedy, the right to rescind, are implied in all sales of immovables where the price is lesionary, unlike the right of redemption which is not implied in contracts of sale, but must be expressly agreed upon by the parties. Both are causes of rescission or dissolution of sales and have many similarities. LSA-C.C. Art. 2566. The right to rescind for lesion, however, is no less a part of every contract of sale because not expressly agreed to by the parties.
The reference in LSA-C.C. Art. 2600 to "heirs" exercising the action of rescission for lesion beyond moiety and making applicable by reference the rules of LSA-C.C. Arts. 2581 and 2582 relating to the right of redemption, necessarily implies the heritability of the action for lesion. Defendant's argument that the reference to "heirs" in this article should be limited to forced heirs, while the reference to "coheirs" in the redemption articles is not so limited, is without express codal or jurisprudential basis. The argument might have some merit if rescission for lesion were deemed to be a strictly personal right of action, but such is not the case.
"Every obligation shall be deemed to be heritable as to both parties, unless the contrary be specially expressed, or necessarily implied from the nature of the contract." LSA-C.C. Art. 1999. The contract of sale has not been expressly designated as personal and is, thus, deemed to be heritable. Since the right to rescind for lesion is implied in all contracts of sale involving immovable property then it too is heritable.
The Louisiana Supreme Court has declared the right to rescind a sale for lesion beyond moiety to be one which is not personal in Belcher and Creswell v. Johnson, 114 La. 640, 38 So. 481 (1905). That suit was brought by creditors wishing to exercise the right of their debtor to demand rescission of a sale for lesion beyond moiety. The court first considered "the broad rule that all the debtor's property is bound for his debt. Civ. Code, art. 3182." Then the court said that a creditor can exercise all the rights of his debtor, except those exclusively personal. After listing those rights which are strictly personal the court stated that the right to rescind the sale for lesion beyond moiety "is not a mere personal right. It is subject to seizure." The right to rescind a sale for lesion was likewise determined to be subject to seizure in Nugent v. McCaffrey, 33 La.Ann. 271 (1881).
Upon a determination that the right is not a personal one granted only to an individual and which would abate on death, it follows that the right is necessarily one which is heritable and a part of the decedent's patrimony which passes to his successors at his death. LSA-C.C. Arts. 871, 872. We, therefore, hold that the right to rescind a sale for lesion beyond moiety may be exercised by anyone who succeeds to the patrimony of a decedent whether a forced, collateral or legal heir or a testamentary legatee. The right is likewise subject to seizure and exercise by creditors. When a succession is under administration, as in this case, the administrator is the *51 proper party to assert the right of the succession. LSA-C.C.P. Arts. 3191, 3196, 3211.

THIRD SPECIFICATION OF ERROR
This specification of error is directed toward the trial court's failure to determine that the decedent intended to donate the value of the property in excess of the $4,000 cash consideration received. Defendant argues that the donation was either gratuitous or remunerative. Various acts of kindness are alleged to have been performed for the decedent by defendant and defendant's father, but these are isolated instances which by no stretch of the imagination can be said to be services with a value approximating that of the property in question. There is some evidence that decedent traded at a store operated by defendant and his father and that there was a friendly relationship. There is, however, no evidence to indicate that the authentic act purporting to be a sale was intended to be anything but a sale. To the contrary, the evidence is that decedent intended to sell the property for what he erroneously believed to be a fair price.

FOURTH SPECIFICATION OF ERROR
Defendant contends that the trial court should have determined the market value of the property at the time of the sale was $175 per acre or $21,000 rather than $200 per acre or $24,000.
The trial court heard testimony from four experts, two each for plaintiff and defendant. The 120-acre tract consisted of three types of land roughly equal in size: onethird classified as swampland with a small amount of nonmerchan table hardwood; one-third described as woodland; and the remaining one-third described as farmland. A pipeline servitude occupying four acres runs through the property. The buildings and improvements on the property were given no value by any of the appraisers. Plaintiff's appraisers used the market data approach and comparable sales in the area to determine that the fair market value was $250 per acre and $275-$300 per acre, respectively. Defendant's experts used income production or use value to determine that the fair market value was $88.28 per acre and $175 per acre, respectively.
The trial court noted as significant that no comparable sale was cited in which the per acre value was less than $175. The court stated in reasons for judgment that "the vast disparity in the respective values argued for by the defendant is simply not reasonable." The plaintiff has the burden of proving the value by strong and conclusive proof. Value may be determined by a combination of many factors. Recent sales in the area and highest and best use are indications of market value which go to the weight. Blaize v. Cazezu, supra. This court finds that there is strong and convincing evidence supporting the trial court's determination of market value.

FIFTH SPECIFICATION OF ERROR
Defendant argues in brief that there is no evidence that the $320 income was received by the defendant prior to the filing of plaintiff's suit. Suit was filed March 31, 1976. Defendant testified he received $200 in the fall of 1976 for an agricultural lease covering the growing season of that year. Defendant also testified that $120 annual delay rental from an oil, gas and mineral lease was received in 1977. Clearly, plaintiff is entitled to credit for these amounts in the event the defendant elects to return title to the property to plaintiff.
The judgment of the district court is affirmed at appellant's cost.
Affirmed.