**UNITED STATES of America**

**v.**

**1040.30 ACRES OF LAND, MORE OR LESS, Situate IN CALCASIEU PARISH, State of LOUISIANA, and Stanolind Oil and Gas Company, et al., and Unknown Owners.**

**Civ. A. No. 5080.**

United States District Court
W. D. Louisiana, Lake Charles Division.

Aug. 28, 1956.

---

8. Moseley v. Hearrell, 141 Tex. 280, 171 S.W.2d 337.

9. Lane v. Hughes, Tex.Civ.App., 228 S. W.2d 986, 988 and cases therein cited.

200

T. Fitzhugh Wilson, U. S. Atty., Edmund E. Woodley, Asst. U. S. Atty., Shreveport, La., for the Government.

S. W. Plauche, Jr., W. P. Hardeman, Lake Charles, La., for defendants.

HUNTER, District Judge.

This is a condemnation proceeding brought by the United States for the purpose of condemning 1040.30 acres of land for use in connection with the Lake Charles Air Force Base in Calcasieu Parish, Louisiana. The condemned land belonged to Stanolind and was taken on July 1, 1955.

After a full and complete trial during which both sides had an opportunity to develop all relevant facts, the jury, after an obviously painstaking consideration of the evidence, returned their verdict and made their separate awards of just compensation to the defendant in respect to the several tracts condemned.

The jury's verdict was as follows, to-wit:

"We the jury, fix just compensation as follows:

"(1) The fee simple title to the land designated as Tract No. 41, subject, however, to existing easements for public roads and highways, public utilities, railroads, and pipe lines, excepting and reserving unto the respective mineral owners, including third party lessees, their heirs, successors, and assigns, all oil, gas and other minerals and mineral rights thereto in and under said land, without, however, rights of ingress and egress for the purposes of exploration or development of said interests for the period the title to said land is vested in the United States of America.

"428.39 acres      $364,131.50

"(2) An assignable easement and right for a term of twenty-five (25) years for the establishment, maintenance, operation, and use of a safety area in connection with the Lake Charles Air Force Base in Calcasieu Parish, State of Louisiana, in, on,

across, and over Tract No. 42E, consisting of the right to prohibit human habitation; the right to remove buildings presently or hereafter being used for human habitation; the right to prohibit gatherings of more than twenty-five (25) persons; the right to post signs indicating the nature and extent of the government's control; and the right of ingress and egress over and across said land for the purpose of exercising the other rights set forth herein; reserving, however, to the landowner, their heirs, executors, administrators, successors, and assigns all right, title, interest, and privilege as may be used and enjoyed without interfering with or abridging the rights hereby acquired by the Government; subject, however, to existing easements for public roads and highways, public utilities, railroads, and pipelines.

"591.77 acres          $251,502.25"

"(3) A perpetual and assignable easement and right-of-way in, upon, under, over and across Tract No. 43E for the construction, maintenance, repair, operation, patrol, replacement and/or removal of an access road, together with the right to trim, cut, fell and remove therefrom all trees and underbrush and obstructions and any other vegetation, structures or obstacles within the limits of the right-of-way; subject, however to existing easements for public roads and highways, public utilities, railroads, and pipelines.

"6.89 acres          $3,445.00"

"(4) A perpetual and assignable easement and right-of-way in, upon, under, over and across Tract No. 45E for the construction, maintenance, repair, operation, patrol, replacement and/or removal of an access road, together with the right to trim, cut, fell and remove therefrom all trees and underbrush and obstructions and any other vegetation, structures or obstacles within the limits of the right-of-way; subject,

however, to existing easements for public roads and highways, public utilities, railroads, and pipelines.

"3.19 acres          $1,435.50"

"(5) A perpetual and assignable easement and right-of-way in, upon, under, over and across Tract No. 46E for the construction, maintenance, repair, operation, patrol, replacement and/or removal of an access road, together with the right to trim, cut, fell and remove therefrom all trees and underbrush and obstructions and any other vegetation, structures or obstacles within the limits of the right-of-way; subject, however, to existing easements for public roads and highways, public utilities, railroads, and pipelines.

"5.6 acres          $4,760.00"

"(6) A perpetual and assignable easement and right-of-way in, upon, under, over and across Tract No. 44E for the construction, maintenance, repair, operation, patrol, replacement and/or removal of a railroad spur tract, together with the right to trim, cut, fell and remove therefrom all trees and underbrush and obstructions and any other vegetation, structures, or obstacles within the limits of the right-of-way; subject, however, to existing easements for public roads and highways, public utilities, railroads, and pipelines.

"4.46 acres          $3,791.00"

"(7) We, the jury, find that severance damage is due and fix damages therefor at $17,000.00."

"April 13, 1956"
          Date
"/s/   Arthur J. LeBlanc, Jr."
          Foreman

Using round figures, the per acre award for each tract arrived at by the jury averaged as follows:

| Tract No. 41 | $850 per acre |
|---|---|
| Tract No. 42E | $425 per acre |
| Tract No. 43E | $500 per acre |
| Tract No. 44E | $850 per acre |
| Tract No. 45E | $450 per acre |
| Tract No. 46E | $850 per acre |

The Government seeks a new trial and assigns five grounds therefor [1].

■ The Government's contention that the amounts awarded are excessive and not supported by the evidence is apparently directed only to the jury's awards as to Tracts 41 and 42E. We are satisfied that the jury's awards were proper, did full justice both to the defendant and the Government, and were based upon solid reasons, finding strong support in the record. It is obvious that the jury accepted the testimony of defendant's witnesses who were familiar with values in the area involved and did not accept the arbitrary conclusions of the Government's witnesses, who had no experience in the locality except in preparation for their testimony at this trial [2].

We turn to the record, and in regard to Tract No. 41, the testimony of defendant's witnesses on value was as follows: Forrest K. White, $250,000; Jules Reinauer, $350,000; Mose Abelman, $350,000; Nolen J. Viator, $514,000; and Charles Ray Grein, $406,970.50. Mr. White's valuation for this tract was approximately $114,000 less than the jury's award, but the witnesses Reinauer and Abelman arrived at a value of approximately $14,000 less than the jury's award. The witness Viator's appraisal exceeded the jury's award by some $150,000, and Mr. Grein's valuation evidence exceeded the jury's award by over $40,000. The jury had before it not only the testimony of defendant's witnesses, all of whom were entirely qualified, but also had other evidence regarding comparable sales introduced both by the Government and by the defendant [3], and they had abundant evidence regarding the nature of the property, its location, the growth and population trends of Lake Charles, and the important characteristics and features of the land itself. The jury under these circumstances would have been entirely within their rights to have arrived at a different valuation, either higher or lower than any of the witnesses who testified as experts. Atlantic Coast Line R. Co. v. United States, 5 Cir., 1943, 132 F.2d 959; and Scott v. United States, 5 Cir., 1944, 146 F.2d 131, 133.

1. (i) The amounts awarded by the jury are excessive and not supported by the evidence.

(ii) The Court erred in refusing the Government's motion to strike the testimony of defendant's witness, Forrest K. White, insofar as it related to Tract 42E.

(iii) The Court's permitting Charles Ray Grein to testify as to the valuation of certain tracts.

(iv) The Court's action in permitting the Andrews-Clonts deed to be admitted in evidence over the objection of the defendant.

(v) The alleged error of the Court in refusing to instruct the jury to the effect that the agricultural uses of Tract No. 42E by the landowner or its lessees were not affected by the easement taken by the Government.

2. The three Government expert witnesses, who also are full time employees of the Government, were shown to have made their valuations some twenty-seven (i. e., March 10, 1953) prior to the date of taking, and the "comparable sales" adverted to by the Government witnesses, and used by them in arriving at their valuations, were demonstrated on cross-examination to have been entirely remote, both from the standpoint of date and geographical location.

3. The principal sales relied upon by the defendant with their approximate dates and approximate per acre prices were as follows, to-wit:

| Sale | Acreage | Date | Per Acre Price |
|---|---|---|---|
| Greinwich Village Sale | 147 acres | 1951 | $1,575.00 |
| Andrews-Clonts Sale | 5 acres | July 2, 1956 | 850.00 |
| Davis-Roberts | 20 acres | June, 1955 | 900.00 |
| Erwin Heirs-Coastal Dev. | 203 acres | May, 1953 | 1,500.00 |
| Switzer-Roper | 160 acres | April, 1955 | 1,000.00 |

In regard to Tract 42E, for which the jury awarded $251,502.25, the testimony of defendant's witnesses as to value was as follows: Nolen J. Viator, $532,000; Jules Reinauer, $300,000; Forrest K. White, $250,000; and Mose Abelman, $300,000. It is noted that Mr. White's valuation was approximately $1,500 less than the amount awarded, but the witnesses Reinauer and Abelman arrived at a valuation approximately $48,500 more than the jury's award. The witness Viator's appraisal exceeded the jury's award by some $281,000. The evidence not only supports the jury's verdict, but it overwhelmingly preponderates in favor of that verdict.

█ The government next complains of the refusal of the Court to strike a certain portion of the testimony of Forrest K. White where it is contended that Mr. White used an erroneous basis for his testimony in regard to 42E. Mr. White's testimony complained of was in substance that the highest and best use of Tract 42E as pertained to market value was for residential purposes, and that in his opinion this highest and best use was for the period of the easement completely destroyed. He, therefore, assigned no residual value to the landowner for the use of the land for agricultural purposes. This was merely Mr. White's opinion, and he was entitled to voice that opinion. In any event, the amount of the value remaining to Stanolind in Tract 42E for agricultural purposes was a fact issue which was fully developed in the evidence. Even the Government's witnesses admitted that there was some diminution of value of Tract 42E for agricultural purposes. But even if this did constitute error by the Court, it was certainly a harmless error. *The other expert witnesses assigned a much higher value to 42E than did Mr. White.*

In regard to Tract 42E, the fact is that the jury understood the situation thoroughly, and actually allowed the Government credit for considerably more value for agricultural purposes than even their own testimony allowed. Assuming, as plaintiff contends, that the jury adopted as a norm an approximate $850 per acre price for the property, the jury's award at an average of $425 per acre for Tract No. 42E obviously allowed a great deal more value per acre to the Government for the agricultural value of the property than the Government's own experts, who testified that the value per acre of the subject property based on agricultural use was much less.

██ We next examine the Government's contention that Mr. Grein should not have been permitted to testify as to value. Mr. Grein has long been active as a buyer and seller of residential subdivision properties in the immediate vicinity of the condemned tracts. He was entirely familiar with its location and its characteristics. He testified that in his opinion the property had a market value as of the date of taking of $950 an acre. Mr. Grein meets the most rigorous tests in qualifying as an expert. One need not be a realtor or a real estate salesman in order to qualify as an expert on real estate values in an expropriation case. Any person who by experience, training or knowledge possesses knowledge superior to the jury is entitled to express his opinion on value on such a case as this. Orgel on Valuation under Eminent Domain, 2nd Edition, the Michie Company, 1953, Vol. 1, pp. 564, et seq., (and numerous decisions from many jurisdictions footnoted therein); State of Louisiana v. Barbe, 209 La. 185, 24 So.2d 372, 373; Morton Butler Timber Co. v. United States, 6 Cir., 1937, 91 F.2d 884, 887; Allen v. First Nat. Bank of Atlanta, 5 Cir., 1948, 169 F.2d 221, 224; United States ex rel. and for Use of Tennessee Valley Authority v. Davis, D.C., 41 F. Supp. 595, 598; United States v. 3969.59 Acres of Land, D.C., 56 F.Supp. 831, 837; and Brown v. Town of Eustis, D.C.Fla., 293 F. 197.

As the Sixth Circuit Court of Appeals declared in Morton Butler Timber Co. v. United States, supra (noting with approval the Ruling Case Law):

" 'Not only are professional appraisers or dealers in the class of property in question competent as

witnesses, but also others who have bought and sold similar property, or who know the prices paid therefor, even though that knowledge is based on secondary evidence, provided, of course, they are familiar with the property in question. Such witnesses are not, like experts, supposed to have science and skill superior to that of the jurors, but have a knowledge of the particular facts which the jurors have not.' "

Judge Hutcheson, speaking for the Court of Appeals, Fifth Circuit, succinctly stated the Federal Court rule in regard to the qualifications of a witness as to value in Allen v. First Nat. Bank of Atlanta, supra, as follows:

"The competency of a witness to give his opinion as to value is for the trial court. The extent of his knowledge of the subject matter goes to the weight rather than to the admissibility of his testimony. This is especially true in the Federal Court where whether a witness is qualified is addressed to the sound discretion of the court."

The Louisiana rule is in accord, as shown by State v. Barbe, supra, wherein the Supreme Court of Louisiana declared:

"In arriving at the market value of the property, it is the duty of the jury of freeholders to take into consideration all of the evidence.

" ' *  *  * It has been held, on authority and reason, that the opinions of ordinary witnesses acquainted with the value of property are often admitted from necessity, even though their knowledge is not the result of peculiar skill in any particular branch of business or department of science.' Lewis Baillie & Co. v. Western Assurance Co. of Toronto, 49 La.Ann. 658, 21 So. 736, 737.

"A witness is qualified to testify as to the value of land if he lives in the neighborhood, is acquainted with the property, and has knowledge of

the real estate transactions, in the immediate vicinity. Louisiana Railway & Navigation Co. v. Morere, 116 La. 997, 41 So. 236.

"In the case of Louisiana Railway & Navigation Co. v. Morere, supra, it was pointed out that a defendant should be permitted to testify as to the value of his own property if he had owned the land for some time, was well acquainted with it, and knew of the sales of land in the neighborhood.

"A person who resides, and owns, and has bought and sold, and knows of other sales of property in the vicinity of that sought to be expropriated is not disqualified to give an opinion as to the value of the property. Louisiana Railway & Navigation Co. v. Sarpy, 117 La. 156, 41 So. 477."

Even if the Federal evidentiary rule did not allow for the introduction of Mr. Grein's testimony (which, of course, it does), under Fed.Rules Civ.Proc. rule 43(a), 28 U.S.C.A., the relevant portion of which is quoted hereinafter, the Louisiana State rule (exemplified in the Barbe case, supra) authorizes the admission of his testimony:

Rule 43(a). " *  *  * All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, *or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held.* In any case, the statute or rule which *favors* the reception of the evidence governs and the evidence shall be presented according to the most convenient method prescribed in any of the statutes or rules to which reference is herein made. The competency of a witness to testify shall be determined in like manner."

The next contention urged by the Government is that the Court erred in permitting over its objection the admission of the Andrews-Clonts deed in evidence. They say that this was error because the sale was dated subsequent to the taking. The facts are that the taking occurred on July 1, 1955 and that this deed was signed on July 2, 1955. The deed was signed in San Francisco, California. The trade was actually consummated sometime before the execution of the deed. It was certainly within the Court's discretion to permit the introduction into evidence of this sale, and especially is this true, since it was actually agreed upon before the taking. Although it is quite irrelevant to the present discussion, the Court wishes to say that in its opinion, this sale was as to both time and location of more probative value than were the distant sales relied on by the Government, most of which occurred a number of years before the taking. The Government's objection to the offering was correctly denied and goes to the weight of the evidence rather than to the admissibility thereof. Ramming Real Estate Co. v. United States, 8 Cir., 122 F.2d 892.

There remains only the complaint of plaintiff that the Court should have instructed the jury that the land owners could still use Tract No. 42E for farming purposes. The Court instructed the jury in detail relative to Tract 42E and no specific objection was made thereto. The record in this case has not been fully transcribed, but my notes show that the jury was charged as follows:

"Now, this brings us to Tract No. 42E, which is colored in blue on the map marked "Land owner No. 2." The United States, as you have learned from the evidence, has taken a 25-year restrictive easement on Tract No. 42E. The measure of just compensation for the taking of this 25-year easement of Tract No. 42E is the difference in the market value of this tract before the taking on the one hand and the market value of this tract after the taking on the other hand, *less the amount of the value of the right of reversion to the land owner*. Let me explain this further. You will first determine the fair market value of Tract 42E as of July 1, 1955. And then you will determine what was the fair market value of the same tract after the burden of the Government's easement was placed on the tract on July 1, 1955. You may consider further under the evidence and under the wording of the easement whether the Government's easement rights would permit the land owner some use of the property in Tract No. 42E, *such as for agriculture or grazing purposes,* and further whether under the evidence any such rights remaining in the land owner caused a market value to exist in Tract No. 42E after the taking. If you should conclude that Tract No. 42E possessed some or any market value after the placing of the burden of the easement on said tract, then you will deduct that amount from the fair market value of Tract 42E which existed prior to the taking of the easement thereon by the Government. And also, you will further subtract from the total market value of Tract 42E as it existed prior to this condemnation the value of the right of reversion to Stanolind of this property after a period of 25 years. Also, as in the case of the other five tracts, the mineral rights in said Tract No. 42E were not taken by the government, and if you find that such mineral rights possessed any value at the date of the taking, you will deduct that amount from the amount of just compensation which you will determine to be owing to the land owner for the taking."

The Government does not contend this charge was erroneous and did not particularize any objection to it. They only asked for the additional charge as to farming. This was adequately and, I believe, correctly covered.

### Conclusion

The Court is fully satisfied that the jury's verdict was fair and just. It was in accord with the weight of the evidence. We find no merit in the Government's allegations of error. Accordingly, the motion for a new trial is denied.