WATKINS, Judge.
This is an action brought by Mrs. Raytha Lee Singletary Moran to set aside a sale made by her to Judy H. Aleman and Donald Aleman dated December 6, 1983, for a price of $10,000.00. In the act of sale the property is described by section and quarter section lines, and is further described as containing 9.46 acres, more or less. Mrs. Moran is the wife of Theodore J. Moran but the property was Mrs. Moran's separate property, having been received by her when the Succession of Earl Singletary was partitioned.
After the act of sale was passed, the property was surveyed by the Alemans’ surveyor, and an act of correction giving a more elaborate property description was prepared at the request of the Alemans in the hope that Mrs. Moran would sign it. The act of correction was delivered to Mrs. Moran and she immediately became suspicious. She telephoned her surveyor and read the description to him. The surveyor took down the measurements and later that day informed Mrs. Moran that the tract in *651 fact included 17.42 acres, rather than 9.46 acres, as was stated in the property description.
After contacting the Alemans in the hope that they would cancel the sale and accept the return of the purchase price, Mrs. Moran filed suit.
As filed, the suit had three main contentions: (1) that the sale was made for the sum of $1,000.00 an acre, rather than in globo, (2) that the Alemans were guilty of fraud in withholding the true acreage from Mrs. Moran and (3) that the sale was lesion-ary.
It appears that Mrs. Moran owned several hundred acres on the west bank of the West Pearl River in St. Tammany Parish and that the tract in question lay on the east bank of the West Pearl River. She wanted to sell the tract in question to set a price for her remaining land, which she feared was about to be expropriated by the Federal Government. She asked her brother, Osey Singletary, who dealt in real estate, to try to find a buyer for the tract in question. Mr. Singletary informed Mrs. Aleman that the tract in question was for sale, and she indicated she was interested in buying it. Mr. Singletary, Mr. Aleman and Mr. Moran met and inspected the tract in question. Mr. Singletary, who testified for the Alemans, and Mr. Aleman both testified that “T-Bo”, which was Mr. Moran’s nickname, had said while they were looking at the land that it probably contained more than 10 acres. Mr. Moran denied having mentioned the acreage. Mrs. Moran denied having been told that the tract contained more than 10 acres.
The trial court found that fraud had not been proven. In that conclusion, given the facts as stated, we do not find that the trial court was clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), Canter v. Koehring Company, 283 So.2d 716 (La.1973). See former LSA-C.C. art. 1847(6) (now LSA-C.C. art. 1953 which took effect after the act of sale was passed, the date of the act of sale having been December 6, 1983, and the new art. 1953 having taken effect January 1, 1985.)
On appeal, Mrs. Moran has abandoned the argument that the sale was by acreage, rather than in a lump sum. See LSA-C.C. art. 2494. The trial court’s finding that the sale was for a lump sum is thus not questioned by Mrs. Moran on appeal.
However, Mrs. Moran does urge again on appeal the argument that the sale was lesionary. In an action for rescission for lesion beyond moiety of a sale of immovable property, the vendor must prove by clear and convincing evidence that the price given was less than one-half of the value of the thing sold. The standard to be applied to determine the value of the property is fair market value at the time of the sale. LSA-C.C. art. 2590, 2591; Bisco v. Middleton, 383 So.2d 1047 (La.App. 1st Cir.1980); Cheramie v. Cheramie, 382 So.2d 1003 (La.App. 1st Cir.1980); Rogers v. Read, 355 So.2d 46 (La.App. 2nd Cir.1978).
Two expert appraisers testified, James A. Stevenson for plaintiff and Leland L. Landry for the defendants. Stevenson testified that the tract in question was worth $2600.00 per acre while Landry testified the land was worth $940.80 per acre. Both used comparable sales to determine market value.
Stevenson used as comparables mainly lands that bordered both the West Pearl River and the Pearl River Navigational Canal, which lies to the west of the West Pearl River. No comparables were used for sales of tracts lying on the east side of the West Pearl River (as does the tract in question) by either appraiser, except for an expropriation sale by the Federal Government which defendants’ appraiser’s testimony indicated was not indicative of true value. Stevenson adjusted the prices of the comparables upward because the east bank of the West Pearl River Navigational Canal was bordered by a levee, then a borrow pit from which land for the levee was taken, and then a slough, before one got to the relatively high land on the west bank of the West Pearl River. Stevenson therefore considered the comparables to be inferior to the subject tract. Landry testified that the upward adjustments were uncalled for and if anything a downward adjustment was required, as land bordering on both waterways was preferable, as the West Pearl Navigational Canal was straight and free of debris, while the West *652 Pearl River itself was curving and filled with logs.
However, we might note that Landry’s comparables were also flawed, as all but two or three tracts used as comparables were sold after the date of the subject sale and two were several miles above the tract in question, although they lay on the West Pearl River. The trial court preferred the testimony of the defendants’ expert over that of plaintiff’s expert. We cannot say that in so doing the trial court abused its discretion or manifestly erred. Faustina Pipe Line Co. v. Hebert, 469 So.2d 483 (La.App. 3d Cir.1985), writ denied, 474 So. 2d 1295 (La.1985).
We, therefore, affirm the judgment of the trial court, at appellant’s cost.
AFFIRMED.